UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**25-CR-20131-BECERRA/TORRES**

CASE NO. _____

18 U.S.C. § 1349
18 U.S.C. § 1028A(a)(1)
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

v.

**ABEL HUMBERTO PERLA BONILLA,**
███████████████████████████████, and
███████████████████████,

Defendants.
_____/

FILED BY ___BM___ D.C.

Mar 27, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

#### California Unemployment Insurance During the COVID-19 Pandemic

1.    Unemployment Insurance ("UI") was a joint state and federal program that provided monetary benefits to eligible beneficiaries. UI payments were intended to provide temporary financial assistance to lawful workers who were unemployed through no fault of their own. Beginning in or around March 2020, in response to the COVID-19 pandemic, several federal programs expanded UI eligibility and increased UI benefits, including the Pandemic Unemployment Assistance Program, Federal Pandemic Unemployment Compensation Program, and the Lost Wages Assistance Program.

2.    In the State of California, the Employment Development Department ("CA-EDD"), based in Sacramento, California, administered the UI program. Those seeking UI benefits

submitted online applications. In order to receive benefits, applicants were required to provide their personally identifying information ("PII"), such as their name, social security number, and mailing address, among other things. Applicants also had to self-certify that they met a COVID-19-related reason for being unemployed, partially employed, or unable to work. The CA-EDD relied upon the information in the application to determine UI benefits eligibility.

3. In order to successfully file an unemployment claim with CA-EDD, the applicant had to pass an identity verification process with the online service provider "ID.me" (www.id.me) by submitting the applicant's PII, a copy of the applicant's driver's license, and a real-time photograph of themselves to ID.me for identity verification. In order to submit a selfie photograph, a text message was sent to the claimant's cellular telephone containing a link that allowed the claimant to upload the photograph to ID.me.

4. Once an application was approved, the CA-EDD typically distributed state and federal UI benefits electronically to a debit card administered by Bank of America, N.A. ("Bank of America"), which claimants could use to withdraw funds and/or make purchases. These debit cards were sent via the U.S. Postal Service to the address the claimant provided. Claimants could activate their debit card via telephone or online.

5. Visa Debt Processing Solutions ("Visa DPS") was a vendor contracted by Bank of America to process all transactions on UI prepaid debit cards, including those issued by the CA-EDD. Visa DPS had two platform processor data centers that housed all UI prepaid card data for Bank of America. Those data centers were located in Ashburn, Virginia and Highlands Ranch, Colorado. Any transaction made on a Bank of America UI prepaid debit card, including loading of funds, point of sale transactions, and Automated Teller Machine ("ATM") withdrawals, passed through one of those two data processor centers.

### The Defendants and Related Individuals

6. **ABEL HUMBERTO PERLA BONILLA** was a resident of Miami-Dade County, Florida.

7. ███████████████████████████ was a resident of Osceola County, Florida.

8. ███████████████████████████ was a resident of Osceola County, Florida.

9. Zachary Kameron Ramyard was a resident of Orange County, Florida.

10. Ben Felix Espinal was a resident of Orange County, Florida.

### COUNT 1
### Conspiracy to Commit Wire Fraud
### (18 U.S.C. § 1349)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as if fully set forth herein.

2. From at least as early as in or around August 2020 and continuing through in or around August 2022, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**ABEL HUMBERTO PERLA BONILLA,**
███████████████████████████, **and**
███████████████████████████,

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other, Zachary Kameron Ramyard, Ben Felix Espinal, and others known and unknown to the Grand Jury to commit wire fraud, that is, to knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing such scheme and artifice to defraud, did knowingly

transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3. It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting false and fraudulent applications to the CA-EDD for UI benefits and payments in the form of prepaid debit cards mailed to residences in the Southern District of Florida and elsewhere; (b) diverting the CA-EDD debit cards and fraud proceeds for the defendants' and co-conspirators' personal use, the use and benefit of others, and to further the fraud; and (c) concealing the commission of the offense and the use of the fraud proceeds.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4. One or more members of the conspiracy purchased the PII of victims in the Southern District of Florida and elsewhere, without lawful authority, and created counterfeit driver's licenses that listed the victims' PII alongside the photographs of **ABEL HUMBERTO PERLA BONILLA,** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and other co-conspirators.

5. Zachary Kameron Ramyard, Ben Felix Espinal, and other co-conspirators, using electronic devices connected to the Internet, submitted false and fraudulent applications for UI benefits to the CA-EDD under the corresponding victims' identities without their authorization. The UI benefit applications contained false and fraudulent representations, including: the claimants' contact information; that the claimants lived in a particular state; that the claimants were

4

available to work during the prescribed periods; and that the claimants were newly unemployed due to a disaster, including the COVID-19 pandemic, among other misrepresentations.

6.  **ABEL HUMBERTO PERLA BONILLA**, ▮▮▮ ▮▮▮ ▮▮▮ ▮▮▮, and other co-conspirators, in the Southern District of Florida and elsewhere, conducted identity verification on ID.me for fraudulent UI benefit applications in victims' names by taking live photographs of themselves that matched counterfeit driver's licenses containing their faces along with PII belonging to victims. **PERLA BONILLA** conducted identity verification on ID.me for approximately 344 fraudulent UI benefit applications in victims' names, and ▮▮▮ conducted identity verification on ID.me for approximately 51 fraudulent UI benefit applications in victims' names.

7.  Over the course of the conspiracy, the CA-EDD approved at least 357 fraudulent UI benefit applications submitted by Zachary Kameron Ramyard, Ben Felix Espinal, and other co-conspirators, resulting in the disbursement of at least $4,812,360 in the form of prepaid debit cards issued by Bank of America.

8.  ▮▮▮ and Zachary Kameron Ramyard rented vehicles that they and co-conspirators used to drive to ATMs throughout Florida.

9.  ▮▮▮, Zachary Kameron Ramyard, Ben Felix Espinal, and other co-conspirators used the fraudulent UI debit cards to withdraw money at ATMs and conduct other transactions, triggering interstate wires, in the Southern District of Florida, Maryland, California, and elsewhere, and used the money for their personal benefit.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2–3
### Aggravated Identify Theft
### (18 U.S.C. § 1028A(a)(1))

On or about the dates enumerated as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

███████████████████████████,

during and in relation to a felony violation of Title 18, United States Code, Section 1349, that is, conspiracy to commit wire fraud, as charged in Count 1 of this Indictment, did knowingly transfer, possess, and use, without lawful authority, the means of identification of another person, as set forth below:

| COUNT | APPROXIMATE DATE | MEANS OF IDENTIFICATION |
|---|---|---|
| 2 | October 27, 2021 | Name and debit card number ending in 5212, issued to "A.O." |
| 3 | November 1, 2021 | Name and debit card number ending in 5212, issued to "A.O." |

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## FORFEITURE ALLEGATIONS

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purposes of alleging forfeiture to the United States of America of certain property in which the defendants, **ABEL HUMBERTO PERLA BONILLA**, ███████, ███████████████████, and ███████████████████, have an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1349, a conspiracy to commit a violation of Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendants shall forfeit to the United States any property, constituting, or derived from, proceeds the person obtained directly or indirectly as result of such offense, pursuant to Title 18, United States Code, Section 982(a)(2)(A).

3. If any property subject to forfeiture as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(2)(A) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(2).

A TRUE BILL

_____
FOREPERSON

_____
HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

_____
JOSEPH EGOZI
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

ABEL HUMBERTO PERLA BONILLA,
████████████████████, and
████████████████████, /

CASE NO.: **25-CR-20131-BECERRA/TORRES**

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
[✓] Miami   [ ] Key West   [ ] FTP
[ ] FTL     [ ] WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take __6__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I   [ ] 0 to 5 days
   II  [✓] 6 to 10 days
   III [ ] 11 to 20 days
   IV  [ ] 21 to 60 days
   V   [ ] 61 days and over

   (Check only one)
   [ ] Petty
   [ ] Minor
   [ ] Misdemeanor
   [✓] Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge _____ Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Darrin P. Gayles, Judge Moreno Case No. 24-CR-20382-DPG; 24-CR-20551-FAM
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By: _/s/ Joseph Egozi_
Joseph Egozi
Assistant United States Attorney
SDFL Court ID No. A5502707

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:   ABEL HUMBERTO PERLA BONILLA

**Case No**: _____

Count #1:

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349
* **Max. Term of Imprisonment: Twenty (20) Years**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: Three (3) Years**
* **Max. Fine: $250,000 or Twice the Gross Gain or Loss Resulting from the Offense**

*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.